**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHANEL INC,

        Plaintiff,

        v.

ZHANG YANG DOING BUSINESS AS THE DOMAIN NAMES IDENTIFIED ON SCHEDULE "A" and DOES 1-10,

        Defendants.

_____/

No. C-12-04428 PJH (DMR)

**REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

      In this trademark infringement and counterfeiting, false designation of origin, and cyberpiracy action, Plaintiff Chanel, Inc. ("Chanel") moves the court pursuant to Federal Rule of Civil Procedure 55(b)(2) for entry of a default judgment against Defendant Zhang Yang, doing business as certain domain names[1] ("Defendant" or "Yang").[2]  Plaintiff asks the court for an award

---

[1] Plaintiff identifies the domain names on "Schedule A, Subject Domain Names," attached to the Complaint (Docket No. 1 at 16-26, "Complaint Schedule A") and on a revised Schedule A attached to Plaintiff's motion for default judgment (Docket No. 40 at 28-33, "Revised Schedule A").

[2] Plaintiff also brought this action against ten Doe Defendants, but only moves for default judgment as to Defendant Yang.  This court recommends that the Doe Defendants be dismissed from the action.  There is no provision in the Federal Rules of Civil Procedure permitting the use of fictitious defendants.  *See Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1191 (9th Cir. 1970).  However, where appropriate (e.g., discussing Plaintiff's allegations), the court collectively refers to Defendant Yang and the Doe Defendants as "Defendants."

of statutory damages, costs of the suit, and a permanent injunction against Defendant.  For the following reasons, the court recommends that Plaintiff's motion be GRANTED.

## I. Background

### A.    Statement of Facts & Procedural History

Plaintiff is a New York corporation that manufactures and distributes luxury goods, including handbags, wallets, and apparel, in this judicial district and throughout the world.  (Compl. ¶ 3.)  Plaintiff owns twenty-five federally registered trademarks (the "Chanel marks") which are used in connection with the manufacture and distribution of its products.  (Compl. ¶ 13; Decl. of Hahn in Supp. of P.'s Appl. for TRO ("Hahn Decl. I"), Aug. 22, 2012, ¶ 4, Ex. A.)  In its complaint, Plaintiff alleges that Defendant Yang is a likely resident of the People's Republic of China and that Defendant Yang, along with the ten Doe Defendants, operates commercial websites with over 100 domain names registered in multiple countries (the "subject domain names").[3]  (Compl. ¶¶ 6, 7; Complaint Schedule A, Revised Schedule A.)  Plaintiff alleges that Defendants' websites advertise and offer for sale counterfeit and infringing Chanel-branded products using trademarks which are exact copies or colorable imitations of the Chanel marks.  (Compl. ¶¶ 4, 7-8, 23.)  Plaintiff further alleges that Defendants are directly and personally contributing to, inducing, and engaging in the sale of counterfeit products.  (Compl. ¶ 6.)  Defendants do not have the right or authority to use the Chanel marks for any purpose.  (Hahn Decl. I ¶ 9.)  The quality of the counterfeit goods is substantially different from Plaintiff's genuine goods, and Plaintiff alleges that Defendants are selling the counterfeit goods with the knowledge that such goods will be mistaken for the genuine products offered for sale by Plaintiff.  (Compl. ¶ 24.)  As a result, Plaintiff claims that Defendants' infringing activities are likely to result in customer confusion, as customers will believe that Defendants' goods are genuine goods originating from, associated with, and approved by Chanel. (Compl. ¶¶ 24, 28, 30.)

---

[3] The revised Schedule A contains the original 128 subject domain names listed on the Complaint Schedule A plus an additional seventeen domain names operated by Defendants that Plaintiff discovered after filing the Complaint.  (*See* Decl. of Hahn in Supp. of P.'s Mot. for Entry of Am. Preliminary Injunction ("Hahn Decl. II"), Oct. 26, 2012, ¶ 9, "Schedule B, New Subject Domain Names," Ex. 1.)

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Plaintiff alleges that Defendants target their business activities toward consumers throughout the United States and within this judicial district through the operation of the "fully interactive commercial websites" operating under the subject domain names. (Compl. ¶ 6.) Plaintiff further alleges that Defendants continue to register and/or acquire new domain names in order to sell counterfeit and infringing products. (Compl. ¶ 9.)

Plaintiff retained Malerie Maggio of Investigative Consultants to investigate the suspected sales of counterfeit Chanel-branded products on one of the websites operated by Defendants. (Hahn Decl. I ¶ 10; Decl. of Maggio in Supp. of P.'s Appl. for TRO ("Maggio Decl. I"), Aug. 29, 2012, ¶ 3; Decl. of Maggio in Supp. of P.'s Mot. for Default J. ("Maggio Decl. II"), Mar. 8, 2013, ¶ 3.) In August 2012, via a proxy server located in this district, Maggio accessed the interactive website at the domain name "2012replicachanelhottest.com" and purchased a Chanel-branded handbag from the site. (Maggio Decl. I ¶ 4.) Maggio's purchase was processed entirely online, which included providing shipping and billing information, payment, and confirmation of her order. (Maggio Decl. I ¶ 4; Ex. A.) She requested that the purchase be sent to her address in San Francisco, California, and communicated via email with the seller. (Maggio Decl. I ¶ 4; Ex. A.) Upon receipt of the handbag, Maggio provided detailed web page captures of the Chanel-branded product to Adrienne Hahn Sisbarro ("Hahn"), who is Chanel's Director of Legal Administration and is responsible for Plaintiff's trademark and anti-counterfeiting efforts in the United States. (Maggio Decl. I ¶ 4; Maggio Decl. II ¶ 4; Hahn Decl. I ¶¶ 3, 11.) Hahn analyzed the web page captures and determined that the handbag was a non-genuine Chanel-branded product. (Hahn Decl. I ¶¶ 12, 15.)

Hahn also accessed each of the websites operating under the subject domain names, and personally reviewed the websites and web page captures reflecting the various Chanel-branded products offered for sale by Defendants. (Hahn Decl. I ¶ 13, Ex. B (web page captures for domain names listed on Complaint Schedule A); Hahn Decl. II ¶ 10, Ex. 2 (web page captures for domain names listed on Schedule B, New Subject Domain Names).) She determined that the products were non-genuine Chanel products and that Defendant did not have authorization to use the Chanel marks on any of the websites operating under the subject domain names. (Hahn Decl. I ¶¶ 13, 15.) As part of her analysis, Hahn noted specific examples of Defendants' infringement of twenty of the Chanel

trademarks at issue on the domain names listed on Complaint Schedule A.  (Hahn Decl. I ¶¶ 13, 14, Exs. B, C.)

Plaintiff filed the current action in this Court on August 23, 2012, asserting three claims against Defendants: 1) trademark counterfeiting and infringement under 15 U.S.C. § 1114; 2) false designation of origin under 15 U.S.C. § 1125(a); and 3) cyberpiracy under 15 U.S.C. § 1125(d). (Compl. ¶¶ 35-56.)  On September 7, 2012, Plaintiff filed an *ex parte* application for a temporary restraining order (TRO) and order to show cause why a preliminary injunction should not issue. [Docket No. 11.]  On September 10, 2012, the Honorable Phyllis J. Hamilton granted Plaintiff's application and entered a TRO enjoining Defendants, *inter alia*, from advertising, promoting, distributing, selling or offering to sell counterfeit and infringing goods using the Chanel marks.  The court also temporarily modified control of the subject domain names and prohibited Defendants from transferring them to other parties.  [Docket No. 13.]  The court subsequently converted the TRO into a preliminary injunction.  [Docket No. 21.]  On October 30, 2012, Plaintiff filed a motion for an amended preliminary injunction, seeking modification of the injunction to include nineteen newly-discovered domain names used by Defendants to advertise, offer for sale and sell counterfeit and infringing goods, for a total of 147 subject domain names.  [Docket No. 24.]  On November 2, 2012, the court granted Plaintiff's motion and entered an amended preliminary injunction.  [Docket No. 26.]

**B.     Motion for Default Judgment**

Plaintiff served Defendant Yang with the summons and complaint via publication on September 18, 2012.  [Docket No. 31 (proof of service).]  Defendants did not file a responsive pleading or otherwise appear, and the court entered default against Defendants on January 11, 2013. [Docket No. 36.]  On March 8, 2013, Plaintiff filed a motion for default judgment against Defendant Yang doing business as the domain names identified on Revised Schedule A, seeking an award of statutory damages, costs of the suit, and a permanent injunction as to 145 domain names.[4]  [Docket

---

[4] The amended preliminary injunction covered 147 domain names.  (*See* Order Granting P.'s Mot. For Am. Preliminary Injunction.)  However, on November 8, 2012, Plaintiff voluntarily dismissed without prejudice all claims related to two of the subject domain names. [Docket No. 29.]

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    No. 40; *see* Revised Schedule A.]  The court referred the motion for default judgment to the

2    undersigned for a Report and Recommendation [Docket No. 41].  On April 22, 2013, the court

3    ordered Plaintiff to provide supplemental briefing regarding the adequacy of its service of the

4    summons and complaint on Defendants by publication.  [Docket No. 47.]  Plaintiff timely submitted

5    the requested briefing (Docket No. 49) and the court held a hearing on June 13, 2013.  [*See* Docket

6    No. 48 (proof of service on Defendants of order setting default judgment hearing).]  Defendants did

7    not appear.  At the hearing, the court asked for additional briefing and evidence in support of

8    Plaintiff's claim that there is personal jurisdiction over Defendant Yang, who appears to reside in

9    China.  In addition, the court ordered Plaintiff to submit admissible evidence connecting Defendant

10   Yang to each of the 145 domain names at issue in this motion.  Plaintiff timely submitted the

11   additional briefing and evidence.  [Docket No. 53.]

12           In connection with its application for a TRO, Plaintiff submitted a summary of the domain

13   name registration reports for each of the domain names listed on Complaint Schedule A.  (Decl. of

14   Gaffigan in Supp. of P.'s Appl. for TRO ("Gaffigan Decl. I"), Sept. 7, 2012, ¶ 2, Ex. A.)  Plaintiff

15   submitted similar data regarding the newly-discovered domain names with its motion for an

16   amended preliminary injunction, (Hahn Decl. II, ¶ 9, Ex. 1), and submitted the underlying domain

17   name registration reports for each of the 145 domain names at issue in this motion with its post-

18   hearing supplemental briefing.  (Decl. of Gaffigan in Supp. of P.'s Mem. of P. & A. in Further Supp.

19   of P.'s Mot. for Default J. ("Gaffigan Decl. III"), Jul. 7, 2013, ¶ 4, Ex. D.)  This information shows

20   that of the 145 subject domain names, 66 are associated with Defendant Yang, because the registrant

21   or "Whois" name for those domain names is "Zhang Yang."  (Gaffigan Decl. I Ex. A; Hahn Decl. II

22   Ex. 1; Gaffigan Decl. III Ex. D.)  Each of those 66 domain names are associated with addresses that

23   are in or appear to be in China.  (*See id*.)  The court will refer to these 66 domain names as the

24   "Yang domain names."  The domain name "2012replicachanelhottest.com," from which Plaintiff's

25   investigator purchased a counterfeit Chanel-branded handbag, is not one of the Yang domain names;

26   its registrant or Whois name is "renzhi lee" of the organization "beijing century."  (*See* Gaffigan

27   Decl. I Ex. A; Gaffigan Decl. III Ex. D at 8; *see also* Maggio Decl. I ¶ 4.)

28

**United States District Court**

For the Northern District of California

In its motion and its supplemental briefing, Plaintiff asserts that all 145 subject domain names at issue in this motion, not just those registered in Defendant Yang's name, are under Yang's common ownership or control.  In support of this assertion, Plaintiff submitted evidence that 40 of the non-Yang domain names, including "2012replicachanelhottest.com," provide an email address (smithoutlet@gmail.com) to customers on their websites that is identical to the email address provided on 14 of the Yang domain names (the "smithoutlet domain names").  (Gaffigan Decl. III ¶ 3, ¶ 4 at 3, Ex. B.)  The court finds that sites providing an email address identical to one tied directly to Defendant Yang are under Yang's ownership or control.  There is strong evidence linking the remaining 39 subject domain names to Defendant Yang as well.  The domain name registration reports for the remaining domain names reveal that they share other common registration email addresses, Whois names, physical addresses, telephone numbers, and/or the domain names redirect[5] to subject domain names (boutiquesmalls.com, ibrandsmalls.com, and chanelbagsonlinesales.com) to which smithoutlet domain names also redirect.  (Gaffigan Decl. III ¶ 4 at 4-10, Exs. C, D.)  The court finds that common email addresses, registration information, and website redirection are adequate to establish Defendant Yang's common ownership or control of all 145 domain names identified on Revised Schedule A and listed on Appendix A, *infra*.

## II.  Legal Standards

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default.  *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001).  Whether to enter a judgment lies within the court's discretion.[6]  *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d

---

[5] An internet redirect forwards all traffic coming into one domain onto another domain.  Plaintiff asserts that an internet redirect establishes "a reliable connection between two domain names as there is no reason one domain name would want to forward all of its internet traffic to an unrelated site." (Gaffigan Decl. III ¶ 4 at 9.)  Absent any reason to suspect otherwise, the court finds this to be a reasonable assumption.

[6] A court, however, may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. Fed. R. Civ. P. 55(b)(2).  Plaintiff has submitted evidence that Defendant is not a minor, incompetent person, or a person in military service.  (Decl. of Gaffigan in Supp. of P.'s Mot. for Default J. ("Gaffigan Decl. II"), Mar. 6, 2013, ¶¶ 7, 8.)

United States District Court

For the Northern District of California

915, 924-25 (9th Cir. 1986)) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."); *Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 999.

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). The fourth factor focuses on the amount at issue in the action, as courts should be hesitant to enter default judgments in matters involving large sums of money. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Constr., Inc.*, No. C 11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations omitted).

### III. Analysis

#### A.    Service of Process

This court does not have jurisdiction over Defendant unless Defendant has been served properly under Federal Rule of Civil Procedure 4. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Plaintiff served Defendant with the summons and Complaint by public announcement via publication on a website on September 18,

2012.  [Docket No. 31 (proof of service).]  Federal Rule of Civil Procedure 4(f) governs service on an individual in a foreign country, and allows for service as follows:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction; or
>> . . .
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

The first question is whether the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ("Hague Service Convention" or "Convention"), applies.  If it does, Rule 4 requires the parties to first attempt service by the means designated in the Convention.  *See* Fed. R. Civ. P. 4(f)(1).  Based upon its investigation, Plaintiff has good cause to believe that Defendant is a resident of China.  (Decl. of Gaffigan in Supp. of P.'s Supplemental Mem. of Law Re Service of Process ("Gaffigan Decl. III") ¶ 3.)  Both the United States and China are signatories to the Hague Service Convention.  *Chanel, Inc. v. Zhixian*, No. 10-CV-60585, 2010 WL 1740695, at *2 n.3 (S.D. Fla. Apr. 29, 2010).  However, the Convention does not apply where a defendant's address is unknown.  *Id*.  Here, Plaintiff researched Defendant and attempted to ascertain a valid physical address for service of process.  (Gaffigan Decl. III ¶ 2.)  Plaintiff's investigators determined that the addresses provided by Defendant in connection with registration data for the subject domain names were false, incomplete, or invalid for service of process.  (Ting Decl., May 9, 2013, ¶¶ 3-4, Ex. A; Alvarez Decl., May 8, 2013, ¶¶ 3-4, Ex. A.)  Plaintiff conducted additional investigation, without success, to determine Defendant's physical address.  (Ting Decl. ¶ 5.)  Accordingly, as Defendant's address is unknown, the Hague Service Convention does not apply.  *See Chanel*, 2010 WL 1740695 at *2.

Under Rule 4(f)(2), if there is no internationally agreed means of service, then service must be effected "by a method that is reasonably calculated to give notice," including "as prescribed by

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

the foreign country's law for service in that country in an action in its courts of general jurisdiction." Fed. R. Civ. P. 4(f)(2)(A); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002) (noting that "a method of service of process must . . . comport with constitutional notions of due process"). China allows service of process by public announcement. *See Chanel*, 2010 WL 1740695, at \*2 n.2 (noting that "Article 84 of the Civil Procedure Law of the People's Republic of China states that '[i]f the whereabouts of a recipient . . . is unknown . . . the document shall be served by public announcement.'"). Service is complete sixty days after the date of the public announcement. (Gaffigan Decl. III ¶ 6, Ex. C at 12 (text of Civil Procedure Law of China).) Plaintiff did not cite any cases discussing the meaning of "public announcement" as used in China's Civil Procedure Law, nor was the court able to find any, although at least one court in this district has authorized service of a summons and complaint on a defendant with an unknown physical address via email and publication on a website. *See Chanel, Inc. v. Qi*, No. 11-cv-00362 CRB (N.D. Cal. Jan. 27, 2011 Order Granting *Ex Parte* Appl. for TRO).

Here, Plaintiff posted a copy of the summons and Complaint on the website located at http://servingnotice.com/so/index/html.[7]  (Gaffigan Decl. III ¶ 8.)  In addition, pursuant to the preliminary injunction in this case, all of the subject domain names are set to automatically redirect to that site, and have done so since at least November 15, 2012. (Gaffigan Decl. III ¶ 9; *see also* Sept. 19, 2012 Preliminary Inj. at 9-10.)  The court concludes that service of the summons and Complaint on Defendant by publication was proper pursuant to Rule 4(f).  As Plaintiff points out, it is reasonable to infer that Defendant would visit the websites he or she operates, and therefore, public announcement accomplished by redirection to the http://servingnotice.com/so/index/html website is highly likely to reach Defendant.  Such service was therefore "reasonably calculated, under these circumstances, to apprise [Defendant] of the pendency of the action and afford [Defendant] an opportunity to respond." *See Rio Props*., 284 F.3d at 1017.

**B.     Subject Matter & Personal Jurisdiction**

---

[7] Plaintiff also served the summons and Complaint on Defendants via the email addresses identified in connection with the registration data for each website operating under the subject domain names listed on Schedule A, Subject Domain Names.  [Docket No. 16 (proof of service by email).]

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides that district courts have original jurisdiction of all actions arising under the laws of the United States, and 28 U.S.C. § 1338, which provides that district courts have original jurisdiction of all actions arising "under any Act of Congress relating to . . . trademarks."

Personal jurisdiction is proper if it is "consistent with [California's] long-arm statute and if it comports with due process of law." *Boschetto v. Hansing*, 539 F.3d 1011, 1020-21 (9th Cir. 2008). Under California's long-arm statute, a federal court may exercise personal jurisdiction over a defendant to the extent permitted by the Due Process Clause of the Constitution. Cal. Code Civ. Proc. § 410.10; *Panavision v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Courts apply a three-part test in determining whether specific jurisdiction exists:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citation omitted). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (internal citations and quotation marks omitted).

A plaintiff bears the burden of establishing that the court has personal jurisdiction over a defendant. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted). "[T]he plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Doe v. Unocal Corp.*, 249 F.3d 915, 922 (9th Cir. 2001) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (internal quotation marks omitted). In considering Plaintiff's motion for default

United States District Court

For the Northern District of California

judgment, the court takes as true the allegations in the Complaint and resolves all factual disputes in Plaintiff's favor. *Id.*; *Rio Props.*, 284 F.3d at 1017.

### 1.   Purposeful Availment

In order to establish the first prong of the specific jurisdiction test, Plaintiff must show that Defendant "either purposefully availed [him or herself] of the privilege of conducting activities in California, or purposefully directed [his or her] activities toward California. *Schwarzenegger*, 374 F.3d at 802. Purposeful availment is most often used in cases related to contract disputes, and purposeful direction is used in suits, such as this trademark action, that sound in tort. *Id.*; *see also Panavision*, 141 F.3d at 1321 (stating a trademark infringement action is "akin to a tort case"). The Ninth Circuit uses the three-part "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984), to evaluate purposeful direction. Under the effects test, a defendant purposefully directs activity at a forum state when he or she "(1) commit[s] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 805 (citation omitted). In the internet context, the Ninth Circuit uses a sliding scale analysis "that looks to how interactive an Internet website is for purposes of determining its jurisdictional effect." *Boschetto*, 539 F.3d at 1018. "Personal jurisdiction is appropriate where an entity is conducting business over the internet and has offered for sale and sold its products to forum residents." *Gucci Am., Inc. v. Wang Huoqing*, C-09-05969 CRB, 2011 WL 31191, at *6 (N.D. Cal. Jan. 3, 2011) (citing *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1077-78 (C.D. Cal. 1999)).

Here, Plaintiff alleges that Defendant's intentional acts include advertising and offering for sale on his or her websites counterfeit and infringing Chanel-branded products using trademarks which are exact copies or colorable imitations of the Chanel marks. (Compl. ¶¶ 4, 7-8, 23.) These acts satisfy the first prong of the *Calder* test. *See Schwarzenegger*, 374 F.3d at 806 (noting that an intentional act refers to "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act.").

The next prong of the *Calder* test is whether Defendant expressly aimed the infringing conduct at California. Plaintiff alleges that Defendant directed the infringing acts at consumers in

United States District Court

For the Northern District of California

California by means of operating fully interactive commercial websites.  (Compl. ¶¶ 6-8.)  Plaintiff

has presented evidence demonstrating that the web pages offering the allegedly counterfeit products

are interactive and target consumers in California and throughout the United States.  (Hahn Decl. I ¶

13, Ex. B (web page captures for domain names listed on Complaint Schedule A); Hahn Decl. II ¶

10, Ex. 2 (web page captures for domain names listed on Schedule B, New Subject Domain Names);

Gaffigan Decl. III ¶ 2, Ex. A (Google Analytics data showing 27,633 page views of

http://servingnotice.com/so/index/html from servers in California).)  In addition, Plaintiff's

investigator purchased a counterfeit Chanel-branded handbag from one of the subject domain names

that is under the common ownership or control of Defendant Yang and received the handbag in San

Francisco, California.  (*See* Maggio Decl. I ¶ 4; Maggio Decl. II ¶ 4.)  Such commercial activity in

the forum amounts to purposeful availment of the privilege of conducting activities within the

forum, thus invoking the benefits and protections of its laws.  *See Gucci Am.*, 2011 WL 31191, at

\*5-6 (citing *Schwarzenegger*, 374 F.3d at 802).  Accordingly, the court concludes that Defendant's

contacts with California are sufficient to show purposeful availment.

### 2. Claim Arises out of Forum-related Activities

The second prong of the test for specific jurisdiction requires that the claim be one that arises

out of or relates to Defendant's activities in the forum.  *Panavision*, 141 F.3d at 1320.  This requires

a showing of "but for" causation.  *Id.* at 1322.  Here, Defendant's contacts with the forum are the

alleged sales of infringing and counterfeit products to customers in this state and in this District.

Therefore, the second prong is satisfied because "but for" Defendant's infringing activity, Plaintiff

would not have been injured.  *See Gucci Am.*, 2011 WL 31191, at \*7.

### 3. Reasonableness of Exercise of Jurisdiction

The third prong of the specific jurisdiction test provides that the exercise of jurisdiction must

comport with fair play and substantial justice.  *Panavision*, 141 F.3d at 1320.  "If the plaintiff

succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present

a compelling case' that the exercise of jurisdiction would not be reasonable."  *Schwarzenegger*, 374

F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).  To determine

United States District Court

For the Northern District of California

whether the exercise of jurisdiction over a non-resident defendant is reasonable, courts generally

consider seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core–Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  Here, the majority of the

*Core-Vent* factors weigh in favor of finding that the exercise of jurisdiction is reasonable in this

case.  Although Defendant appears to be a resident of China and the burden to litigate in California

is significant, Defendant has purposefully availed him or herself of the benefits of conducting

business within this forum.  To the extent that the exercise of jurisdiction would conflict with the

sovereignty of Defendant's state, this factor weights in Defendant's favor.  *See Harris Rutsky & Co.*

*Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003) (noting that

"[l]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a

citizen from a sister state because important sovereignty concerns exist.").  However, this factor is

not sufficient to defeat the court's exercise of personal jurisdiction here, where the other *Core-Vent*

factors support a finding

of personal jurisdiction absent any showing by Defendant to the contrary.  *See Gucci Am.*, 2011 WL

31191, at *7-8.  The court concludes that the exercise of personal jurisdiction over Defendant is

reasonable in this case.

### C.   *Eitel* Factors

#### 1.   Allegations and Substantive Merits of Plaintiff's Claims

Here, the crucial *Eitel* factors are the second and third: whether Plaintiff's Complaint

contains sufficient facts to establish and succeed on its claims.  These factors essentially require

Plaintiff to state a claim on which it may recover.  *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th

Cir. 1978).

##### a.   Trademark Counterfeiting & Infringement

13

United States District Court

For the Northern District of California

Plaintiff's first cause of action is for trademark counterfeiting and infringement pursuant to section 32 of the Lanham Act, 15 U.S.C. § 1114.  To prevail on a claim for trademark infringement, a holder of a registered service mark must show that another person is using: (1) any reproduction, counterfeit, copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising or any goods; (5) where such use is likely to cause confusion, or to cause a mistake or to deceive.  15 U.S.C. § 1114(1)(a); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).  "Neither actual confusion nor intent is necessary to a finding of likelihood of confusion." *Id.* (citation omitted).  The crucial question is "whether the public is likely to be deceived or confused by the similarity of the marks."  *New West Corp. v. NYM Co. of Cal.*, *Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) (citations omitted).

Here, Plaintiff alleges that it is the owner of the Chanel marks at issue and has submitted copies of the Federal Registrations for each of the marks.  (Compl. ¶ 13; Hahn Decl. I Ex. A.) Plaintiff alleges that Defendant uses the Chanel marks to sell counterfeit products bearing the marks on Defendant's websites and that these actions cause confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's counterfeit goods.  (Compl. ¶¶ 4, 7-8, 23, 24, 28, 30.)  Plaintiff has also presented evidence that Defendant owns or controls all of the domain names at issue in this litigation.  (Gaffigan Decl. III ¶¶ 3, 4, Exs. B, C, D.)  Based upon these allegations and the evidence presented, the court finds that Plaintiff has established a valid claim for trademark infringement.

### b.        False Designation of Origin

Plaintiff next alleges that Defendant's use of the Chanel marks constitutes false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  That statute provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or

United States District Court

For the Northern District of California

as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Plaintiff has offered evidence establishing that it owns the twenty-five trademarks at issue here, and has demonstrated that it uses the trademarks in commerce.  (Compl. ¶¶ 13, 14; Hahn Decl. I ¶¶ 4-6, Ex. A.)  Further, Plaintiff has offered evidence that Defendant "used terms or designs similar to plaintiff's marks without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary purchasers as to the source of the goods."  *Chimney Safety Inst. of Am. v. Chimney King*, No. 2004 WL 1465699, at *2 (N.D. Cal. May 27, 2004).  (*See* Hahn Decl. I Ex. C.)  Plaintiff has thus established a valid claim for false designation of origin under 15 U.S.C. § 1125(a).

### c.    Cyberpiracy

Plaintiff's third cause of action is for cyberpiracy pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).  The Act states:

A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person –

(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that –

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

(III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A).  To prevail under 15 U.S.C. § 1125(d), Plaintiff must demonstrate that Defendant: "(1) register[ed], use[d], or traffic[ked] in a domain name that (2) is identical or

**United States District Court**

For the Northern District of California

1   confusingly similar to a distinctive or famous trademark, with (3) bad faith intent to profit from the

2   trademark. *Verizon Cal. Inc. v. OnlineNIC Inc.*, No. C 08-2832 JF (RS), 2008 WL 5352022, at *2

3   (N.D. Cal. Dec. 19, 2008) (citing 15 U.S.C. § 1125(d)).  Registration of a mark is prima facie

4   evidence that the mark is distinctive. *See* 15 U.S.C. § 1057(b); *see also Two Pesos Inc. v. Taco*

5   *Cabana, Inc*., 505 U.S. 763, 768-69 (1992).

6         In determining the likelihood of confusion under the ACPA, courts compare the plaintiff's

7   mark with the name of the website. *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 782 (8th Cir. 2004)

8   (holding that there was likelihood of confusion where defendant had registered websites including

9   www.my-washingtonpost.com, www.mymcdonalds.com, and www.drinkcoke.org); *see also Louis*

10  *Vuitton Malletier and Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567 (E.D. Pa. 2002) (holding that

11  plaintiff was entitled to default judgment on ACPA claim based on defendant's use of domain name

12  www.louisvuitton-replicas.com).  Courts should not look beyond the domain name to consider the

13  content of the website; "[t]he inquiry under the ACPA is thus narrower than the traditional

14  multifactor likelihood of confusion test for trademark infringement." *Purdy*, 382 F.3d at 783.

15        Here, Plaintiff has alleged and submitted evidence that it owns the Chanel marks and that

16  they are distinctive.  Plaintiff has also alleged and submitted evidence that Defendant has registered

17  over 100 domain names that are confusingly similar to Plaintiff's marks, e.g.

18  "chanelbagsofficialonlinestore.com," "chanelofficialstores.com," and "chanelsalestoreus.com."

19  Finally, Plaintiff has provided evidence that is sufficient to establish bad faith intent to profit from

20  the mark. *See id.*; 15 U.S.C. § 1125(d)(1)(B) (listing factors that may be considered in determining

21  whether there is a bad faith intent to profit).  Specifically, Plaintiff has submitted evidence that

22  Defendant's websites acknowledge Plaintiff's trademark rights by stating that the products they sell

23  are "replica," "knockoff," and "imitation."  (Hahn Decl. I ¶ 13, Ex. B (web page captures for domain

24  names listed on Complaint Schedule A); Hahn Decl. II ¶ 10, Ex. 2 (web page captures for domain

25  names listed on Schedule B, New Subject Domain Names).)  "Bad faith is manifest" where goods

26  are identified as replicas. *Rolex Watch USA, Inc. v. Jones*, No. 99 Civ. 2359(DLC), 2000 WL

27  1528263, at *3 (S.D.N.Y. Oct. 13, 2000).  Plaintiff has thus presented sufficient allegations and

28  evidence to state a claim for cyberpiracy.

**United States District Court**

For the Northern District of California

### 2.      Remaining *Eitel* Factors

The remaining *Eitel* factors support default judgment as well.  First, if default judgment is not entered in Plaintiff's favor, then Plaintiff would likely be left without a remedy.  *See Pepsico*, 238 F. Supp. 2d at 1177.  Second, the sum of money at state in this action is appropriate, as statutory damages are expressly provided for in cases involving the use of a counterfeit mark.  *See* 15 U.S.C. § 1117(c).  Defendant has not appeared in this action, let alone contested any of Plaintiffs' material facts.  Finally, nothing in the record suggests that Defendant defaulted due to excusable neglect. Plaintiff has served Defendant submissions relating to the case throughout the pendency of this action, [*see* Docket Nos. 31, 34, 43, 46, 48, 50, 52, 54], and Defendant has failed to participate in the litigation.  *Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 1005.  Examining these facts in the aggregate, the court finds that the first six *Eitel* factors outweigh the Federal Rules of Civil Procedure's strong preference for a decision on the merits.  The court therefore recommends an entry of a default judgment.

### D.      Remedies

### 1.      Injunctive Relief

Plaintiff requests that the court grant a permanent injunction barring Defendant from further interfering with Plaintiff's business.  Specifically, Plaintiff seeks a permanent injunction barring Defendant from manufacturing, importing, advertising, promoting, distributing, selling or offering to sell goods that infringe on the Chanel marks, and an order transferring the subject domain names to Plaintiff's control.

Under 15 U.S.C. § 1116(a), a court has the "power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right the registrant of a mark." 15 U.S.C. § 1116(a).  "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21*, 846 F.2d at 1180.  "[D]istrict courts should apply 'traditional equitable principles' in deciding whether to grant permanent injunctive relief, and the decision is 'an act of equitable discretion by the district court, reviewable on appeal

United States District Court

For the Northern District of California

1    for abuse of discretion.'" *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137-38 (9th Cir.

2    2006) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

3          Here, traditional equitable principles weigh in favor of an injunction.  Plaintiff has provided

4    evidence of Defendant's infringing activity, thus demonstrating a likelihood of success on the

5    merits.  Plaintiff has also established a likelihood of confusion with respect to Defendant's use of the

6    counterfeit Chanel marks, and Defendant's ongoing use of the counterfeit marks to sell inferior

7    goods could harm Plaintiff's reputation and goodwill, thus causing irreparable harm.  The balance of

8    hardships tips in Plaintiff's favor, and accordingly, the court recommends that the court issue an

9    injunction in favor of Plaintiff.

10         Having determined that Plaintiff is entitled to injunctive relief, the court must determine the

11   appropriate scope of relief.  Federal Rule of Civil Procedure 65 requires that "[e]very order granting

12   an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; [and] shall

13   describe in reasonable detail . . . the act or acts sought to be restrained." Fed. R. Civ. P. 65(d).  A

14   broad injunction is especially appropriate "[w]hen the infringing use is for a similar service."

15   *Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1177 (9th Cir. 2007) (quoting *GoTo.com, Inc. v.*

16   *Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000)).

17         Plaintiff seeks the following injunctive relief[8]:

18   Defendant and his officers, agents, servants, employees and attorneys, and all persons acting
     in concert and participation with Defendant are hereby permanently restrained and enjoined
19   from:

20             a.      manufacturing or causing to be manufactured, importing, advertising, or
                promoting, distributing, selling or offering to sell counterfeit and infringing goods
21             using Plaintiff's trademarks identified in Paragraph 13 of the Complaint ("the
                Plaintiff's Marks");
22
               b.      using the Plaintiff's Marks in connection with the sale of any unauthorized
23             goods;

24             c.      using any logo, and/or layout which may be calculated to falsely advertise the
                services or products of Defendant offered for sale or sold via the domain names
25             identified in Appendix A hereto (collectively the "Subject Domain Names") and/or

26

27         _____

            [8] The language of the requested injunctive relief is taken from Plaintiff's proposed order with
28   the following modification: in lieu of Plaintiff's reference to those domain names "identified in Schedule
     'A' hereto," the court has substituted "Appendix A hereto."

any other website or business, as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff;

d.      falsely representing themselves as being connected with Plaintiff, through sponsorship or association;

e.      engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendant offered for sale or sold via the Subject Domain Names and/or any other website or business are in any way endorsed by, approved by, and/or associated with Plaintiff;

f.      using any reproduction, counterfeit, copy, or colorable imitation of the Plaintiff's Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendant via the Subject Domain Names and/or any other website or business, including, without limitation, handbags, wallets, shoes, boots, cosmetics, sunglasses, clothing, watches, or costume jewelry, including necklaces, bracelets, earrings, brooches, and rings;

g.      affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or sold by Defendant via the Subject Domain Names and/or any other website or business, as being those of Plaintiff or in any way endorsed by Plaintiff;

h. otherwise unfairly competing with Plaintiff;

i. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above; and

j. using the Plaintiff's Marks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites registered by, owned, or operated by Defendant, including the Internet websites operating under all of the Subject Domain Names.

(2) Additional Equitable Relief:

a. In order to give practical effect to the Permanent Injunction, the Subject Domain Names are hereby ordered to be immediately transferred by Defendant, his assignees and/or successors in interest or title, and the Registrars to Plaintiff's control. To the extent the current Registrars do not facilitate the transfer of the domain names to Plaintiff's control within five (5) days of receipt of this judgment, the Registries shall, within thirty (30) days, change the Registrar of Record for the Subject Domain Names to a Registrar of Plaintiff's choosing, and that Registrar shall transfer the Subject Domain Names to Plaintiff;

b. Upon Plaintiff's request, the top level domain (TLD) Registry for each of the Subject Domain Names, within thirty (30) days of receipt of this Order, shall place the Subject Domain Names on Registry Hold status for the life of the current registration, thus removing them from the TLD zone files maintained

United States District Court

For the Northern District of California

by the Registry which link the Subject Domain Names to the IP addresses where the associated websites are hosted; and

c. Upon Plaintiff's request, the Internet Corporation for Assigned Names and Numbers ("ICANN") shall take all actions necessary to ensure that the top level domain Registry responsible for the Subject Domain Names transfers and/or disables the Subject Domain Names.

Plaintiff has established Defendant's ownership or control over the 145 domain names identified on the revised Schedule A. The requested injunctive relief is necessary to prevent Defendant from unlawfully infringing upon the Chanel marks with respect to the websites at those domain names. The court recommends that Plaintiff's request for injunctive relief be granted as to the domain names identified on the revised Schedule A and Appendix A attached hereto.

### 2. Statutory Damages

#### a. Lanham Act Damages

The Lanham Act provides that a trademark owner may recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action where a plaintiff has established trademark infringement. 15 U.S.C. § 1117(a). In lieu of damages in the form of lost profits, a plaintiff may elect to receive an award of statutory damages in trademark actions involving the use of a counterfeit mark. 15 U.S.C. § 1117(c). A court may award "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). A court may grant enhanced damages of up to $2,000,000 per counterfeit mark where it finds willful infringement. 15 U.S.C. 1117(c)(2). Willful infringement occurs when a defendant knowingly and intentionally infringes on a trademark, *see Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216-17 (9th Cir. 2003), and can also be inferred from a defendant's failure to defend. *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). A court has wide discretion in determining the amount of statutory damages. *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001).

Here, Plaintiff requests an award of $3,000 per demonstrated infringement of each registered Chanel mark counterfeited, totaling 35 infringements, for a total award of $105,000. (Pl.'s Mot. 15; *see* Hahn Decl. I Ex. C.) Plaintiff argues that this request is at the low end of the range prescribed

1    under 15 U.S.C. § 1117(c) and is appropriate based on Defendant's extensive and willful

2    counterfeiting of the Chanel marks.  Plaintiff alleges that Defendant has knowingly sold or offered

3    for sale goods bearing marks which are identical to the Chanel marks with the intent to capitalize on

4    the reputation and goodwill of the marks, and Plaintiff has submitted evidence of the infringement of

5    each of its marks.  (Hahn Decl. I ¶ 13, Ex. B; Hahn Decl. II ¶ 10, Ex. 2.)  In addition, Defendant has

6    failed to appear or defend this action.  Defendant's infringement is therefore willful and the court

7    finds Plaintiff's request for an award of $105,000 to be reasonable.  *See Chanel, Inc. v. Lin*, No. C-

8    09-04996 JCS, 2010 WL 2557503, at * (N.D. Cal. May 7, 2010) (awarding $456,000 in statutory

9    damages for willful infringement of 19 trademarks on eight types of goods); *Chanel, Inc. v. US880*,

10   No. C 10-2601 PJH (JSC) (N.D. Cal. Jul. 28, 2011) (awarding $3,000 each for fifteen demonstrated

11   infringements for a total of $45,000); *Chanel Inc. v. Weng*, No. C-10-03620 WHA (JCS) (N.D. Cal.

12   May 3, 2011) (awarding $196,000 in statutory damages for willful infringement of seven trademarks

13   on seven types of goods).  Accordingly, the court recommends that Plaintiff be awarded $105,000 in

14   damages based on Defendant's trademark infringement.

15                              **b.      Cyberpiracy Damages**

16          Plaintiff also seeks an award of statutory damages for its ACPA claim.  *See* 15 U.S.C. §

17   1117(d) (providing for statutory damages for violation of § 1125(d)(1)).  Plaintiff requests an award

18   of $50,000 per domain name for a total award of $6,800,000.  (Pl.'s Mot. 18.)  Because the court

19   recommends awarding statutory damages for the same conduct under § 1117(c), the court declines to

20   recommend that additional statutory damages under § 1117(d) be awarded.  *See Ringcentral, Inc. v.*

21   *Quimby*, 711 F. Supp. 2d 1048, 1065 n.4 (N.D. Cal. 2010) (declining to award additional statutory

22   damages for ACPA claim where it awarded damages for trademark claim based on use of counterfeit

23   mark); see also *Chanel Inc. v. Weng*, No. C-10-03620 WHA (JCS) (N.D. Cal. May 3, 2011) (same).

24                              **3.      Costs & Interest**

25          Plaintiff also seeks an award of costs in the amount of $350, consisting of the filing fee.

26   (Gaffigan Decl. II ¶ 17.)  Under the Lanham Act, a prevailing plaintiff is entitled to costs.

27   Therefore, the court recommends that this cost be awarded in full.  Plaintiff also seeks an award of

28   postjudgment interest.  Pursuant to 28 U.S.C. § 1961(a), "interest shall be allowed on any money

United States District Court

For the Northern District of California

1  judgment in a civil case recovered in a district court." Therefore, the court recommends that

2  Defendant be ordered to pay interest on the amount of the judgment.

3                                              **V.  Conclusion**

4         Based on the foregoing, the court recommends that Plaintiff's Motion for Default judgment

5  be GRANTED as to Plaintiff's trademark infringement and false designation of origin claims.  The

6  court recommends that Plaintiff be awarded $105,000 in statutory damages and $350 in costs, as

7  well as postjudgment interest.  The court further recommends that a permanent injunction be entered

8  against Defendant as follows:

9         Defendant and his officers, agents, servants, employees and attorneys, and all persons acting
10        in concert and participation with Defendant are hereby permanently restrained and enjoined
          from:

11             a.      manufacturing or causing to be manufactured, importing, advertising, or
                promoting, distributing, selling or offering to sell counterfeit and infringing goods
12              using Plaintiff's trademarks identified in Paragraph 13 of the Complaint ("the
                Plaintiff's Marks");
13
               b.      using the Plaintiff's Marks in connection with the sale of any unauthorized
14              goods;

15             c.      using any logo, and/or layout which may be calculated to falsely advertise the
                services or products of Defendant offered for sale or sold via the domain names
16              identified in Appendix A hereto (collectively the "Subject Domain Names") and/or
                any other website or business, as being sponsored by, authorized by, endorsed by, or
17              in any way associated with Plaintiff;

18             d.      falsely representing themselves as being connected with Plaintiff, through
                sponsorship or association;
19
               e.      engaging in any act which is likely to falsely cause members of the trade
20              and/or of the purchasing public to believe any goods or services of Defendant offered
                for sale or sold via the Subject Domain Names and/or any other website  or  business
21              are  in  any  way  endorsed  by, approved by, and/or associated with Plaintiff;

22             f.      using  any  reproduction, counterfeit, copy, or colorable imitation of the
                Plaintiff's Marks in connection with the publicity, promotion, sale, or advertising of
23              any goods sold by Defendant via the Subject Domain Names and/or any other
                website or business, including, without limitation, handbags, wallets, shoes, boots,
24              cosmetics, sunglasses, clothing, watches, or costume jewelry, including necklaces,
                bracelets, earrings, brooches, and rings;
25
               g.      affixing, applying, annexing or using in connection with the sale of any
26              goods, a false description or representation, including words or other symbols tending
                to falsely describe or represent goods offered for sale or sold by Defendant via the
27              Subject Domain Names and/or any other website or business, as being those of
                Plaintiff or in any way endorsed by Plaintiff;
28

h. otherwise unfairly competing with Plaintiff;

i. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above; and

j. using the Plaintiff's Marks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites registered by, owned, or operated by Defendant, including the Internet websites operating under all of the Subject Domain Names.

(2) Additional Equitable Relief:

a. In order to give practical effect to the Permanent Injunction, the Subject Domain Names are hereby ordered to be immediately transferred by Defendant, his assignees and/or successors in interest or title, and the Registrars to Plaintiff's control. To the extent the current Registrars do not facilitate the transfer of the domain names to Plaintiff's control within five (5) days of receipt of this judgment, the Registries shall, within thirty (30) days, change the Registrar of Record for the Subject Domain Names to a Registrar of Plaintiff's choosing, and that Registrar shall transfer the Subject Domain Names to Plaintiff;

b. Upon Plaintiff's request, the top level domain (TLD) Registry for each of the Subject Domain Names, within thirty (30) days of receipt of this Order, shall place the Subject Domain Names on Registry Hold status for the life of the current registration, thus removing them from the TLD zone files maintained by the Registry which link the Subject Domain Names to the IP addresses where the associated websites are hosted; and

c. Upon Plaintiff's request, the Internet Corporation for Assigned Names and Numbers ("ICANN") shall take all actions necessary to ensure that the top level domain Registry responsible for the Subject Domain Names transfers and/or disables the Subject Domain Names.

Any party may file objections to this report and recommendation with the district judge within ten days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civ. L.R. 72-3.  Immediately upon receipt of this order, Plaintiff shall serve a copy of this order on Defendant and file a proof of service with the Court.

IT IS SO ORDERED.

Dated: August 13, 2013

_____
DONNA M. RYU
United States Magistrate Judge

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**APPENDIX A**

1.  2012authenticchanel.com
2.  2012chanelbagsmall.com
3.  2012chanelbagsoutlets.com
4.  2012replicachanelhottest.com
5.  affordablechanelhotsale.com
6.  authenticchanelbagssale.com
7.  authenticchanelmall.com
8.  authenticchaneloutlet.com
9.  authenticchanels.com
10.  authenticchanelsoutlet.com
11.  authenticchanelstimes.com
12.  authenticchaneltimes.com
13.  bagsfoauthenticchanel.com
14.  bargainchanelhotstore.com
15.  bestchanelbagsoutlet.com
16.  bestchanelonlineshop.com
17.  bestdreamchanel.com
18.  bestlchanelsale2012.com
19.  bestlovechanel.com
20.  boutiquesmalls.com
21.  buyauthenticchanel.com
22.  buy-chaneloutlet.com
23.  buyingchanelonline.com
24.  chanelauthentication.com
25.  chanelbagoutletssua.com
26.  chanelbagoutletssusa.com
27.  chanelbags08.com
28.  chanelbagsau.com
29.  chanelbagsdeoutletstore.com
30.  chanelbagsfosale.com
31.  chanelbagskyhouse.com
32.  chanelbagsofficialonlinestore.com
33.  chanelbagsonlinesales.com
34.  chanelbagstimes.com
35.  chanelbagsunglasses.com
36.  chanelbagwebsite.com
37.  chanelbargainsale.com
38.  chanelbigdiscount.com
39.  chanelcococo.com
40.  chanelcolourfulonline.com
41.  chanelconsignmentsite.com
42.  chanelfamoustore.com
43.  chanelfashionnowdays.com
44.  chanelhandbagsed.com
45.  chanelhandbagser.com
46.  chanelhandbagsor.com
47.  chanelhandbagsoutletmall.com
48.  chanelinvogueshop.com
49.  chanel-kingdom.com
50.  chanelnicebags.com
51.  chanelofficialapproval.com
52.  chanelofficialonline.com

<div style="writing-mode: vertical-rl">**United States District Court** For the Northern District of California</div>

53. chanelofficialonlinemall.com
54. chanelofficialonlineshopping.com
55. chanelofficialonlinesshopping.com
56. chanelofficialonlinestore.com
57. chanelofficialsite.com
58. chanelofficialsstore.com
59. chanelofficialstore.com
60. chanelofficialstores.com
61. chanelonlinesaleconsignment.com
62. chanelonlineshoppingmall.com
63. chanelonlineshops.com
64. chanel-outletonlines.com
65. chaneloutletonlineusa.com
66. chanel-outletsonlines.com
67. chanel-outletstores.com
68. chanels2012.com
69. chanelsalestoreus.com
70. chanelsbagsoutlets.com
71. chanelscoco.com
72. chanelsonlineshopping.com
73. chanels-onlineshopping.com
74. chanelsoutlet-onlines.com
75. chanelsoutletstore.com
76. chanelsoutletzones.com
77. chanelstimes.com
78. chaneltimes.com
79. chanelwithrealquality.com
80. charmingchaneloffer.com
81. cheapchanelfamestore.com
82. cheapestchanelbags.com
83. cheap-maccosmetics.net
84. chicchaneloutlet.com
85. classicchanelselling.com
86. cochaneloutletstore.com
87. cocochanelflapbag.com
88. cocochanelhandbagss.com
89. cocochanelonlineus.com
90. cocochanelonlineusa.com
91. colorfulstores.com
92. distinctivechanelsale.com
93. dreamchaneloutlet.com
94. dreamchaneltime.com
95. dreamchaneltimes.com
96. dreamfashionchanel.com
97. dreamtopbags.com
98. elegantchanelbags.com
99. flowerychanelonlineoutlet.com
100. glamourchanelsale.com
101. handbagschanelhot.com
102. highlevelchanelreplica.com
103. ibrandsmalls.com
104. ichanel-originaloutlet.com
105. iechaneloutletstore.com
106. igooooogle.com
107. intochanellife.com

United States District Court

For the Northern District of California

108. justlovefashionchanel.com
109. justlovenicechanel.com
110. lovechanelbags4u.com
111. lovecocochanelbag.com
112. lovefashionchanel.com
113. luxuriestimes.com
114. luxurysboutique.com
115. luxurysboutiques.com
116. minechaneloutlet.com
117. nicechanelstore.com
118. offerchanelspecialoutlet.com
119. officalchanel.com
120. officalchanelbags.com
121. officialchanelbagsoutlet.com
122. officialchanelonlineshopping.com
123. officialchanelonlinestore.com
124. officialchaneloutlet.com
125. officialchaneloutlets.com
126. officialchaneloutletstore.com
127. officialchanelsonlinestore.com
128. officialchanelwebsite.com
129. outletforchanel.com
130. outletforchanelbags.com
131. outletforchanelsbag.com
132. realchanelforsale.com
133. realchaneloutletsoutlet.com
134. replicachaneltimeless.com
135. sellingchaneloutlet.com
136. seochanel.com
137. stylishchaneloutlet.com
138. superiorchanel.com
139. topbagsforchanel.com
140. topchanelmall.com
141. topchaneloutletmall.com
142. variouschanelgoods.com
143. vipchanel.com
144. winsomechanelsellonline.com
145. wonderchanelstore.com